1 | LEE TRAN & LIANG APLC
K. Luan Tran, SBN 193808
2 | Johnny Kim, SBN 230853
601 S. Figueroa St., Ste. 4025
3 | Los Angeles, CA 90017
Tel:  (213) 612-3737
4 | Fax: (213) 612-3773

5

Attorneys for Creditor Promate Electronic Co. Ltd.
6

7 | **UNITED STATES BANKRUPTCY COURT**

8 | **CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE**

9

10 | In re Soyo, Inc.                                              )  Case No.  6:09-19355-DS
)
11 |                                                               )  Judge:  Hon. Deborah J. Saltzman
            Debtor.                                               )
12 |                                                               )  Chapter 7
)
13 |                                                               )  NOTICE OF MOTION AND MOTION
)  FOR AN ORDER AMENDING THE
14 |                                                               )  DEBTOR'S SCHEDULE "F" BY
)  STRIKING THE "DISPUTED"
15 |                                                               )  SCHEDULING OF THE UNSECURED
)  CLAIM  OF CREDITOR PROMATE
16 |                                                               )  ELECTRONIC CO., LTD
)
17 |                                                               )  [FRBP 1009]
)
18 |                                                               )  [Filed concurrently with the Declarations of
)  Andrew Huang and Johnny Kim; Req. for
19 |                                                               )  Jud. Notice; Proposed Order]
)
20 |                                                               )  DATE:   May 6, 2010
)  TIME:    1:30 p.m.
21 |                                                               )  PLACE:  3420 Twelfth St.
)             Riverside, CA 92501
22 |                                                               )             Ct. Rm. 345
)
23 |                                                               )
)
24 |                                                               )
)
25 | _____

26

27

28

1

---

1  TO:    THE HONORABLE DEBORAH J. SALTZMAN, U.S. BANKRUPTCY JUDGE,

2  DEBTOR SOYO GROUP, INC., PATRICIA ZIMMERMAN CHAPTER 7 TRUSTEE,

3  THEIR RESPECTIVE ATTORNEYS OF RECORD, IF ANY, AND THE OFFICE OF

4  THE U.S. TRUSTEE:

5        NOTICE IS HEREBY GIVEN that on May 6, 2010 at 1:30 p.m. or as soon

6  thereafter as the matter may be heard, in Courtroom 345 of the United States Bankruptcy

7  Court, for the Central District of California located at 3420 Twelfth St., Riverside, CA

8  92501, before the HONORABLE DEBORAH J. SALTZMAN,  United States

9  Bankruptcy Judge, creditor PROMATE ELECTRONIC CO., LTD (Promate) will and

10  hereby does, by and through its Motion, move for an order amending the Debtor's

11  Schedule "F" by striking the  "disputed" scheduling of the non-priority unsecured claim

12  of creditor/movant Promate.

13        This Motion is based on the fact that there is no bona fide legal or factual dispute

14  as to liability or amount as to the debt claimed by Promate against Debtor, and Debtor is

15  obligated to pay under the governing provisions of *Cal. U. Comm. Code* (UCC).  In

16  addition, Debtor never made any objections as to the goods delivered or amount owed

17  and even made a bad faith attempt to tender payment in full.  Moreover, the balance of

18  equities weighs heavily in favor of striking the "disputed" scheduling to allow Promate to

19  obtain insurance coverage for the $729,400.00 debt owed by Debtor.

20        This Motion is brought pursuant to FRBP 1009(a), applicable provisions of Cal. U.

21  Comm Code § 2602 et seq., (which govern the conduct/rights of parties to a sale of goods

22  such as computers monitors here), and should the Court ultimately find necessary, 11

23  USCA § 502, and FRBP 3007.   Plaintiffs' Motion is further based upon this Notice, the

24  following Memorandum of Points and Authorities, the supporting declarations of Andrew

25  Huang, and Johnny Kim, Esq., the documentary evidence attached to the Request for

26  Judicial Notice, Promate's proof of claim, and upon such other and further oral and

27  documentary evidence as may be presented to this Honorable Court at the time of the

28  hearing.

2

1

2   DATED:  March ___, 2010

3                                         LEE TRAN & LIANG, APLC

4

5                                         By _____

6                                             Johnny Kim, Esq.
                                            Attorneys for Promate Electronics Co., Ltd.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR ORDER AMENDING DEBTOR'S SCHEDULES BY STRIKING
EXPRESS "DISPUTED" SCHEDULING OF PROMATE'S UNSECURED CLAIM

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### Preliminary Statement

Movant PROMATE ELECTRONICS, CO., LTD., (Promate) is an unsecured non-priority creditor of debtor SOYO GROUP, INC. (Debtor). *Debtor's Schedule F*, Req Jud. Not., Ex. "A." As a party-in-interest, Promate hereby respectfully requests that the Debtor's Schedule F be amended by issuance of an order striking the "disputed" designation of Promate's claim pursuant to FRBP 1009(a). Debtor has baselessly scheduled its debt to Promate as "disputed" in its Schedule F.

In or around June and July 2008, Promate sold and delivered 3,690 computer monitors to Debtor for a total amount of $729,400.00. Thereafter, from September 9, 2008 to September 17, 2008, Debtor—*without making any objection or dispute*—issued four (4) separate checks totaling $729,400.00 to Promate as payment in full for the goods delivered. However, due to a superfluous and dubious "TW" placed at the end of Promate's name on the checks, Promate's bank refused to honor the checks.

Then, on December 2, 2008, five (5) months after final delivery of the goods and after having attempted to tender full payment *without objection*, the Debtor—for the first time—indicated in a letter that it would withhold payment from Promate while Debtor's unrelated lawsuit against another entity, Nits Technology, Inc. ("NITS"), was pending (the "12/2/08 Refusal Letter"). The baseless reason given by Debtor for withholding payment was that "claims by [Promate] [were] inextricably intertwined with the matters in dispute in the pending actions" because Debtor's lawsuit with NITS involved goods claimed to have been manufactured by Promate and later sold to the Debtor by NITS—even though the goods involved in the NITS transaction had absolutely nothing to do with the $729,400.00 worth of monitors the Debtor purchased from Promate. To this day, the Debtor has never explained how payment for the monitors it purchased from

4

1    Promate has anything to do with the claims at issue over different monitors the Debtor

2    purchased from NITS in completely separate transactions even if, *arguendo,* some of the

3    latter were manufactured by Promate.  Moreover, how could any purported nexus justify

4    the Debtor from withholding payment to Promate when the Debtor could not and never

5    has yet to even identify which of the monitors it purchased from NITS were supposedly

6    manufactured by Promate and how they were allegedly problematic.

7         The evidence shows that the Debtor had an ulterior motive for baselessly disputing

8    its debt to Promate.  The December 2nd Refusal Letter was strategically sent to beat the

9    December 3rd, deadline that the parties believed Promate had to file a claim with its

10   insurer under a trade receivables policy to obtain coverage for Debtor's past-due

11   indebtness.  By frustrating Promate's ability to obtain coverage from its insurance carrier,

12   the Debtor presumably sought to ensure that (1) the insurer would not go after Debtor to

13   enforce its subrogation rights and that (2) Promate would remain too geographically

14   remote (from Taiwan) and burdened (financially and otherwise) to ever bring an action

15   against Debtor in the United States.

16        Due to Debtor's bad faith and baseless labeling of its debt to Promate as

17   "disputed," Promate remains unable to obtain insurance coverage for the $729,400.00

18   loss.  On the other hand, Debtor seeks to gain nothing in this bankruptcy proceeding from

19   having the debt be "disputed" on its schedules.  The balance of equities clearly weighs in

20   favor of Promate.

21        Accordingly, the Court should find that there is no bona fide legal or factual

22   dispute as to liability or amount as to Debtor's debt to Promate and strike the "disputed"

23   designation from Debtor's Schedule "F."

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR ORDER AMENDING DEBTOR'S SCHEDULES BY STRIKING
EXPRESS "DISPUTED" SCHEDULING OF PROMATE'S UNSECURED CLAIM

## II.

## Statement of Facts

Background. Promate is a comprehensive electronics solutions and products provider. Its areas of expertise include everything from various engineering disciplines (software, optical, mechanical, and electrical), to product distribution (e.g., computer monitors) and even full product development.   *see Dec. of A. Huang*, ¶4.

In or around May 2008, Promate was first introduced to Debtor, and soon thereafter, Debtor began ordering computer monitors from Promate. *see Dec. of A. Huang*, ¶8a.

Subject Debt. From in or around May 2008 to November 2008, Promate sold and delivered computer monitors to the Debtor pursuant to ten (10) purchase orders (PO) the Debtor submitted to Promate. *Id.*  Debtor paid Promate for all of the monitors Promate sold and delivered pursuant to 9/10 POs, except for the 3,690 monitors ("Subject Monitors") Promate sold pursuant to the Debtor's fifth PO (No. 5263) ("Subject PO").  .

Debtor paid the invoices Promate issued for the $1^{st} - 4^{th}$ POs by wire transfer (85% up front and 15% after delivery) and the invoices issued for the $6^{th} - 10^{th}$ POs by letter of credit (LC). *see Debtor's Payment Records*, Decl. A. Huang, ¶9f., Ex. "G." [All subsequent references to Exhibits shall mean those attached to the Decl. of A. Huang unless otherwise noted.] Promate issued five (5) invoices (nos. 70031386, 70031387, 70031388, 70031366, and 70031376) ("Subject Invoices") to the Debtor totaling the $729,400.00 purchase price for the Subject Monitors ordered via the 5th or Subject PO. As more particularly hereinafter set forth, those invoices are the only ones that the Debtor was allowed to pay by check and are the only ones still due and owing in the total outstanding past due sum of $729,400.00. *Id.*

Delivery and Acceptance of Subject Monitors without Objection. By July 2008, all 3,960  monitors ordered via the Subject PO had been duly packed and delivered by Promate to the Debtor in four (4) shipments, as confirmed by the packing list and bill of

6

lading for each such shipment. *see Bills of lading & Packing List* (Shipments 1-4), Exs. C-F.

Accordingly, the Debtor accepted all of the monitors without complaint and without ever notifying Promate about any non-conformities, defects, or deficiencies of any kind whatsoever.  Decl. A. Huang, ¶9e.

Debtor's Bad Faith Attempt to Tender Payment in Full.  In September 2008, two (2) months after acceptance, the Debtor tendered four (4) separate checks made out to Promate as full payment of all Subject Invoices as follows:

Summary of Checks

| Subject Invoice | Check No. | Check Date | Check Amount |
|---|---|---|---|
| 70031386 | 12470 | 9/9/08 | $103,320.00 |
| 70031387<br>70031388 | 12471 | 9/14/08 | $206,640.00 |
| 70031376 | 12472 | 9/14/08 | $175,440.00 |
| 70031366 | 12473 | 9/17/08 | $244,000.00 |
| Total: | | | $729,400.00 |

*Id.* at ¶10; *see Tendered Payment Checks*, Ex. "H."

However, the Debtor inexplicably made the checks payable to "Promate Electronic Co. Ltd. *TW*". (emphasis added)  *Id.*  Since Promate's official name does not include a "TW" (or Taiwan) designation, Promate's bank would not honor the checks. After the Debtor was apprised of the error, it continued to promise (without objection) that it would retender payment, but it never did.  *Id.*

Debtor's Acknowledgment of Indebtedness & Validity of Promate's Insurance Claim for Coverage.  In or about early October 2008, the Debtor requested an accounting of its debt to Promate, *including the dates by which Promate would be tendering claims to its insurer* under its insurance policy for unpaid trade receivables.  *Id.* at ¶13; *Email String re Debtor's Req. for Claims Dates*, Ex. "I."  The response provided by Promate

7

1  included an account stated of the Subject Invoices (totaling $729,400.00) along with

2  deadlines to tender claims by Promate for coverage of the Debtor's past due indebtedness

3  the first of which was December 3, 2008. _Id._ Elton Lee, the Debtor's COO, did not

4  object to or challenge the past due $729,400.00 account stated or Promate's intent to

5  tender insurance claims for coverage of same by the noted deadlines. Mr. Lee's only

6  response was to not worry, and that he would provide Promate with some sort of a

7  payment plan. _Id._ at ¶¶10-11. Moreover, on or about November 29, 2008, the Debtor

8  requested, and was provided, contact information of Promate's insurance carrier so that it

9  could supposedly arrange a repayment plan with same after Promate's claim had been

10  paid. _Id._ at ¶14; _Email String re Debtor's Payment Plans_, Ex. "J."

11       The December 2, 2008 Refusal Letter. Unfortunately, the Debtor had no intention

12  of actually arranging a repayment plan with Promate's insurer. Instead, on December 2,

13  2008, one day before Promate's claim deadline, five (5) months after final delivery of the

14  goods and after having attempted—in bad faith—to tender full payment _without_

15  _objection_, Debtor—for the first time—indicated in a letter (the "12/2/2008 Refusal

16  Letter) that it would withhold payment from Promate while Debtor's unrelated lawsuit

17  against another entity, Nits Technology, Inc. ("NITS"), was pending. _see Soyo 12/2/08_

18  _Refusal Letter_, Ex. "K."

19       The baseless reason given by Debtor for withholding payment was that "claims by

20  [Promate] [were] inextricably intertwined with the matters in dispute in the pending

21  actions" because Debtor's lawsuit with NITS involved goods claimed to have been

22  manufactured by Promate—even though the goods involved in the NITS transaction had

23  absolutely nothing to do with the $729,400.00 worth of monitors purchased from

24  Promate. Debtor stated that it could "take no further action on any invoices issued or

25  products supplied by NITS until the pending actions are resolved." _Id._; _cf, Nits'_

26  _Complaint_ and _Debtor's Complaint_, Req. Jud. Not., Exs. "A" and "B," respectively.

27       In March 2009, Promate's Taiwan counsel responded by letter dated 3/31/2009

28  clearly refuting the Debtor's unsupportable position. _see Decl. of J. Kim_, ¶2, Ex. "A." In

1  or around May 2009, the Debtor then filed its voluntary Chapter 7 bankruptcy petition.

2  *Id*. at ¶3.

3

4  III.

5  ARGUMENT

6

7  A.  PROMATE IS A PARTY IN INTEREST WITH THE REQUISITE STANDING TO SEEK THE

   RELIEF REQUESTED

8

9  FRBP 1009(a) states in pertinent part that :

10    ...On motion of a party in interest, after notice and a hearing, the
      court may order any voluntary petition, list, schedule, or
      statement to be amended and the clerk shall give notice of the
11    amendment to entities designated by the court.

12

13  Promate is an unsecured creditor with non-priority claim in the sum of

   $729,400.00 scheduled by the Debtor as being "disputed" in its Schedule F.  Filed

14  concurrently with this motion is Promate's proof of said claim.[1]  Promate is thus a

15  party in interest and respectfully requests that the Court amend the Debtor's Schedule

16  "F" by striking the "disputed" scheduling of its $729,400.00 claim.

17

18

19  B.  PROMATE IS ENTITLED TO AN AMENDMENT STRIKING THE DEBTOR'S

20    "DISPUTED" SCHEDULING OF PROMATE'S CLAIM IN ITS SCHEDULE "F" BECAUSE

21    THE DEBTOR CANNOT ESTABLISH A BONA FIDE DISPUTE.

22

23

24

---

25  [1] It should be noted that Promate is filing its proof of claim concurrently with this motion
   because it never received notice and never had actual knowledge that property was found
26  and a claims filing date set.  In fact, Promate's counsel recently discovered that the
   Debtor incorrectly identified Promate's address, which explains why Promate has never
27  received any notice concerning this bankruptcy from the time the petition was filed.  *see*
28  *Decl. of J. Kim*, ¶4.

9

---

1    The Debtor has scheduled Promate's claim as being "disputed" based on a

2  fictional characterization of the claim.  Promate's claim is for payment of the

3  $729,400.00 due and owing by the Debtor for the 3,690 monitors that Promate sold and

4  delivered to the Debtor.  It has nothing to do with the monitors Nits sold or invoices Nits

5  issued for which Nits has sued the Debtor.  *see e.g., Nits' Complaint*, Req. Jud. Not., Ex.

6  "A" (*containing* no mention of Promate in any way.)

7    Whether there is a bona fide legal or factual dispute as to the liability or amount of

8  any alleged debt, must be determined on an objective basis. *see e.g., In re Vortex Fishing*

9  *Systems, Inc*. (9th Cir. 2002) 277 F.3d 1057, 1064-1065; *B.D.W. Assocs., Inc. v. Busy*

10  *Beaver Bldg. Ctrs., Inc*. (3rd Cir. 1989) 865 F.2d 65, 66; *Matter of Sims* (5th Cir. 1993)

11  994 F.2d 210, 220-221.  Here, the absence of a bona fide dispute is evidenced by the fact

12  that Debtor (1) accepted—without objection—the goods delivered by Promate, (2)

13  attempted to tender payment in full, and (3) repeatedly acknowledged the $729,400 debt.

14    Goods Were Delivered and Accepted.  Under the governing provisions of *Cal.*

15  *Comm. U. Code* ("*UCC*")[2], the Debtor has no colorable basis to dispute the past due debt

16  owed to Promate as a matter of law.  For example, *UCC* § 1307 states:

> **(1)** A bill of lading, policy or certificate of insurance, official weigher's or inspector's certificate, consular invoice, or any other document authorized or required by the contract to be issued by a third party is admissible as evidence of the facts stated in the document by the third party in any action arising out of the contract that authorized or required the document.
> **(2)** In any action arising out of the contract that authorized or required the document referred to in subdivision (1):
> **(a)** A document in due form purporting to be the document referred to in subdivision (1) is presumed to be authentic and genuine. The presumption is a presumption affecting the burden of producing evidence.
> **(b)** If the document is found to be authentic and genuine, the facts stated in the document by the third party are presumed to be true. The presumption is a presumption affecting the burden of proof.

[2] The applicable sections of *Cal. Comm. U. Code* govern the transactions between the Debtor and Promate since they bear an appropriate relation to this California: Debtor is a California corporation with its principal place of business is in California, which is also where Promate delivered the subject computer monitors. *Cal U Com Code § 1301* (a). (b) (*finding* applicability to cross-border transactions bearing an appropriate relation to the state.)

1   Here, all four (4) of Promate's <u>Bills of Lading</u> duly certified by a <u>third party</u>

2   <u>carrier</u> identify <u>Promate</u> (as shipper), <u>Soyo Inc.</u> (or Debtor as consignee), and explicitly

3   identify each of the unpaid <u>Subject Invoices</u> (as "Promate Inv No") issued by Promate to

4   Soyo, Inc. (Debtor) as well as the invoiced monitors being confirmed for shipment upon

5   which Promate's claim against the Debtor is actually based. *see supra, Bills of Lading*

6   *and Subject Invoices*, Exs. "C-F." Under the *UCC* § 1307 presumption of authenticity,

7   those are facts are presumed to be true, which prove that Promate's claim for

8   $729,400.00 is based on the 3,690 monitors it duly sold and delivered to the Debtor,

9   having nothing to do with whatever monitors may have been sold and invoiced to the

10  Debtor by Nits. *See also, supra, Subject PO* (*showing* that the Debtor directly submitted

11  and ordered 3,690 monitors from Promate as "Vendor" with a Debtor designated

12  "Vendor Number" of "PROMTW" of the exact type and quantity of monitors confirmed

13  to have been shipped in the Bills of Lading and for the exact "$729,400.00" total amount

14  invoiced in Promate's Subject Invoices.)  Put another way, the Debtor's dispute is a

15  complete sham.

16      <u>Buyer Must Pay for Goods Accepted</u>. Under *UCC* § 2607, the Debtor is obligated

17  to pay Promate the contract rate of $729,400.00 for all 3,690 monitors it accepted. *UCC* §

18  2607 **(1)** (*obligating* a buyer to pay at the contract price for goods accepted.)

19      <u>Buyer Cannot Revoke Acceptance or Seek Affirmative Relief on Goods Accepted</u>

20  <u>Unless it Timely Identifies and Notifies Seller of Alleged Nonconformity/ Basis</u> .

21  Moreover, at this juncture, the Debtor has no basis to revoke acceptance. *UCC* § 2608

22  **(1)** allows a buyer to revoke acceptance of goods whose nonconformity substantially

23  impairs it value to him. *UCC* § 2608 **(1).**   Here, the only alleged non-conformity raised

24  by the Debtor concern monitors sold and delivered by Nits. *see supra, Refusal Letter.*  In

25  other words, there are no non-conformities to begin with.  And, the Debtor would be

26  precluded from trying to establish one at this time.  *UCC* § 2608 **(2)** states that

27  "revocation of acceptance must occur within a reasonable time after the buyer discovers

28  or should have discovered the ground for it", which is "not effective until the buyer

11

1  notifies the seller of it. *UCC* § 2608 **(2)**. It has been almost two (2) years since the July,

2  2008 final delivery by Promate. There is no colorable basis for the Debtor to try and

3  create some basis now, especially since it transparently and falsely decided to tie

4  Promate's claim to the alleged problems concerning monitors sold by Nits, rather than

5  bring to light and base it on any nonconformities concerning monitors sold by Promate.

6       For the same reasons, the Debtor would also be prohibited from being able to seek

7  any relief based on some alleged breach. *UCC* § 2607 (3) (A) (*establishing* that where a

8  tender has been accepted a buyer must, within a reasonable time after he or she discovers

9  or should have discovered any breach, notify the seller of breach or be barred from any

10  remedy.)

11       <u>Bad Faith Attempt to Tender Payment in Full.</u>  Not only do the Bills of Lading,

12  Subject Invoices (and Subject PO) prove that the Debtor's "dispute" a sham, Debtor even

13  attempted—in bad faith—to tender payment in full.  In September 2008, two (2) months

14  after acceptance, the Debtor tendered four (4) separate checks made out to Promate as

15  full payment of all Subject Invoices.  However, the Debtor inexplicably made the checks

16  payable to "Promate Electronic Co. Ltd. *TW*", making it impossible for Promate's bank to

17  honor the checks.  Had the Debtor truly believed that the Subject Monitors were defective

18  or objected to the amount of the Subject Invoices, Debtor would not have attempted to

19  tender payment in full.

20       <u>Repeated Acknowledgment of Indebtedness.</u>  Instead, when apprised of the issue

21  regarding the checks, Debtor continued to promise (without objection) that it would

22  retender payment, which it never did.  Moreover, in emails in November 2008, Debtor

23  acknowledged the $729,400.00 account stated and Promate's insurance claims for same

24  prove that Promate duly delivered conforming goods which the Debtor accepted.  Debtor

25  even went so far as to request the contact information for Promate's insurance carrier,

26  representing that it intended to arrange a repayment schedule with the insurer.

27       Accordingly, the Court should find that there is no bona fide legal or factual

28  dispute as to liability or amount related to debt owed by Debtor to Promate.

12

C. PROMATE IS ENTITLED TO AN AMENDMENT STRIKING THE DEBTOR'S "DISPUTED"
SCHEDULING OF PROMATE'S CLAIM IN ITS SCHEDULE "F" BECAUSE  IT WAS DONE
IN BAD FAITH AND TO THE UNJUST PREJUDICE OF PROMATE

Debtor's Dispute Is in Bad Faith. The Debtor first scheduled Promate's claim when it filed its amended Schedule F and did so as a claim that was being "disputed".  It is well settled that amendments made in bad faith or with prejudice towards creditors are not permitted.  *see e.g, In re Arnold* (9th Cir. BAP 2000) 252 B.R. 778 (*finding* debtor's attempt to hide assets establishes usual ground for bad faith.)

Here, the Debtor amended and added Promate's claim as one being "disputed" in bad faith.  As the evidence clearly shows, the Debtor intentionally mischaracterized Promate's claim so that it could be tied to an unrelated dispute allowing the Debtor to take the position that any payment obligation would have to wait until there was some final outcome to the dispute.   But, in doing so, the Debtor could not even identify which of the monitors or invoices sold and issued by Nits supposedly gave rise to Promate's claim and what supposed defects affected same.  *see Refusal Letter.*

Moreover, the fact that the Debtor sent its Refusal Letter (12/2/08) one day before it expected Promate to tender its insurance claim (12/3/08)  for payment of the $729,400.00 owed by the Debtor (just a few days after it requested the carrier's contact information in the context of arranging a repayment plan) is evidence of the fact that the Debtor was motivated to somehow prevent coverage of Promate's claim and thereby evade having to deal with Promate's carrier, which would have been subrogated after payment of the claim.

Promate Is Severely Prejudiced by Not Being Able to Obtain Insurance Coverage. Debtor's "disputed" scheduling patently prejudices Promate by allowing the insurance carrier to use same as a basis to deny coverage of a valid and genuine claim for payment of the Debtor's $729,400.00 past due trade indebtedness.  As long as that is allowed to

13

1  continue, Promate will have no chance of being made whole because the Debtor's estate

2  is essentially insolvent and the chances of uncovering any assets let alone assets

3  sufficient to pay Promate are virtually nil considering it has an unsecured nonpriority

4  claim.

5       By contrast, the Debtor would face no prejudice by striking the "disputed" label of

6  Promate's claim because it can still always attempt try and object to Promate's claim on

7  any basis (validity notwithstanding) at any time with or without any such designation..

8  What's more, strking the "dispute" will likely even rid the Debtor and its estate of a large

9  claim  as the insurance company would have no basis to deny Promate coverage and no

10 incentive to pursue Promate's claim . as subrogee, within this bankruptcy as there are no

11 known assets and virtually no chance that assets sufficient to pay any unsecured

12 nonpriority claims will be uncovered.

13      It's bad enough that the Debtor received the benefit of 3,690 monitors but failed to

14 and never will pay Promate the $729,400.00 it owes for them.  What's worse, the Debtor

15 has used a sham to prevent Promate from even being paid by someone else!  Promate is

16 at the behest of this Court to help reconcile the inequities by granting the relief requested

17 especially where the Debtor faces no prejudice in doing so.

18

19      D.  CONCLUSION

20

21      Based on the foregoing, Promate respectfully requests that its motion be granted in

22 its entirety.

23

24 DATED:  March 30, 2010

25                         LEE TRAN & LIANG, APLC

26

27                  By _____

28                     Johnny Kim, Esq.
                       Attorneys for Promate Electronics Co., Ltd.
                                 14